NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: August 12, 2025

S25A0523.  WHISNANT v. THE STATE.

PINSON, Justice.

Karen Michelle Whisnant was convicted of felony murder and other crimes in connection with the shooting death of her husband, Michael Whisnant.[1] On appeal, Whisnant contends that the evidence was not sufficient to support her convictions. She also claims

---

[1] The shooting occurred on February 4, 2020. On February 13, 2020, a Jackson County grand jury indicted Whisnant for malice murder, felony murder predicated on aggravated assault, aggravated assault, cruelty to children in the second degree, cruelty to children in the third degree, possession of a firearm during the commission of a felony, and possession of a firearm by a convicted felon. Whisnant pleaded guilty to possession of a firearm by a convicted felon and was tried by a jury on the other charges from January 9 to 12, 2023. The jury found Whisnant not guilty of malice murder and guilty of all other counts. On July 11, 2023, the trial court entered final judgment sentencing Whisnant to life in prison for felony murder, 10 years in prison for cruelty to children in the second degree, and 10 years in prison for possession of a firearm by a convicted felon, all to be served concurrently, and five years of probation for possession of a firearm during the commission of a felony, to be served consecutively to the other sentences. The remaining convictions merged for sentencing. Whisnant filed a timely motion for new trial, which she later amended through new counsel. On October 11, 2024, the trial court denied

that the trial court erred in declining to grant a new trial based on the "general grounds" set out in OCGA § 5-5-20 and OCGA § 5-5-21, that the verdict was contrary to the principles of justice and equity and strongly against the weight of the evidence, and that the trial court failed to fully consider Whisnant's defense of battered person syndrome when it denied her motion for immunity from prosecution.[2]

Whisnant's claims fail. The evidence was constitutionally sufficient to support her convictions, because there was no dispute that

---

Whisnant's motion for new trial. Whisnant filed a timely notice of appeal. The case was docketed to the April 2025 term of this Court and submitted for a decision on the briefs.

[2] Whisnant's brief on appeal, which was prepared by counsel, is so sparse that it comes dangerously close to abandoning Whisnant's claims of error. The brief contains a total of two citations to the record, and none of its handful of case citations gives the page of the opinion where we may find the proposition for which it is cited. See Supreme Court Rule 22 (1) ("Any enumerated error or subpart of an enumerated error not supported by argument, citations to authority, and citations to the record shall be deemed abandoned."); Supreme Court Rule 22 (2) ("[B]riefs must contain full and complete citations of authority. Georgia case citations must include the case name, volume, and page number…."). Counsel is admonished in the future to comply with our Rule 22 by fully supporting his briefs with full citations to authority and to the record.

Whisnant shot and killed Michael, and the jury was free to disbelieve that the shooting was accidental or done in self-defense, as Whisnant asserted. Whether to grant a new trial based on the general grounds is left to the sole discretion of the trial court, and there is no evidence that the trial court here failed to exercise that discretion. Finally, the evidence supported the trial court's finding that Whisnant was not entitled to immunity because she did not show by a preponderance of the evidence that she killed Michael in self-defense. So her convictions are affirmed.

1. Whisnant and Michael lived together with their blended family, including Whisnant's son, Alex Garcia[3], Michael's daughter, Alexis Whisnant, and Alexis's half-sister through another mother, Haley Jordan.

On the day of the shooting, Michael accused Whisnant of cheating on him with one of his friends. The two argued about it until Whisnant, Michael, and Garcia agreed to go to the friend's home to

---

[3] Alex Garcia was a minor at the time of the shooting but over 18 at the time of trial.

3

resolve the situation. Alexis and Jordan were also in the home during this time, but they were in a back bedroom and were not part of the discussion about the friend.

Whisnant and Garcia went to sit in the car. Michael, however, was taking a long time coming out of the house. Garcia went to check on him, and he found Michael in his room, loading his gun and saying, "[D]on't let him jump on me," referring to the friend. Garcia went back out to the car to tell Whisnant that Michael did not seem to be coming.

Whisnant went into the house. She encountered Michael, and the two started shoving and yelling at each other. Alexis and Jordan heard the argument from the back bedroom. Then, as Garcia told it, Whisnant picked up a gun at some point, and "next thing you know, he pushed her and you just hear, boom, and he falls to the ground." Michael was shot in the upper chest. He later died from his injury.

Alexis and Jordan heard the gunshot. Alexis called 911, and the first responding officers arrived to find Whisnant next to Mi-

chael on the floor, holding a towel over his gunshot wound and repeating, "[P]lease don't leave me." Whisnant was placed in handcuffs and brought outside to a patrol car. She told the officers that Michael had been "beating on her all day," and that she had not known the gun was loaded. The officers did not notice any injuries to Whisnant.

At the police station, Whisnant waived her *Miranda*[4] rights and gave an interview to officers. Portions of the interview were played for the jury. In the interview, Whisnant described Michael as "the devil." She said that she and Michael had "been fighting for three years now," and that over that span she had left him 26 times, but had always come back. She also said that Michael had not pointed a gun at her on the day of the shooting, but that when she shot him, he was charging at her and grabbing her while holding two shotguns and a 9mm handgun.

At the end of the interview, Whisnant also prepared a written statement, which was read aloud at trial by an investigator. The statement differed in some respects from the account in Whisnant's

---

[4] *Miranda v. Arizona*, 384 US 436 (1966).

5

interview. The written statement recounted that, the day before the shooting, Michael had begun accusing Whisnant of cheating on him with the friend. On the day of the shooting, Whisnant, Michael, and Garcia agreed to go "face" the friend to settle the matter. Whisnant and Garcia went to the car while Michael loaded his gun. Whisnant then went back into the house to see if Michael was ready to go. When Whisnant got inside, Michael came toward her, "cuss[ed]" her, slapped her, and said, "I'm going to f**k all y'all up." He briefly walked away, then turned back toward Whisnant and said, "[B]***h, I'm going to settle this." At that point, Michael "looked like the devil was in him." As Michael approached Whisnant, she "got" a gun that was nearby and warned, "I will shoot you if you put your hands on me again." Michael continued coming towards Whisnant, so, in her words, "I pulled the trigger not knowing it was loaded."

At trial, Whisnant asserted a defense of justification based on battered person syndrome. Evidence established that Michael was six feet two inches tall, "about 250, 300 pounds," and "stronger than

most other people," and that he had methamphetamines in his system when he was killed. There was also evidence that Michael had been violent or threatening with Whisnant in the past. One witness testified that about three months before the shooting, Michael had pinned Whisnant against the house with his truck. And two other witnesses talked about times when Whisnant and Garcia came to stay at the witnesses' homes to get away from Michael. On one of those occasions, Whisnant was "shaken," with bruises on her face and an injury to her jaw, and the witness was "concerned she was going to lose all of her teeth."

Whisnant also called a psychologist, Dr. Alfred Hughes, who was qualified as an expert in human psychology, dynamics of family violence, and battered person syndrome. Dr. Hughes testified that he had reviewed evidence, documents, and transcripts from the State's investigation and prosecution of Whisnant. He said that in his opinion, Whisnant was a victim of family violence, and that her experience was consistent with battered person syndrome. He described the syndrome as akin to post-traumatic stress disorder, with

symptoms including "learned helplessness, depression, anxiety, sleep dysfunction, sexual dysfunction and personal difficulties." A person with battered person syndrome may live in a "hyper-aroused state of fear," and can perceive things as threatening when others would not find them alarming. Dr. Hughes testified that, although there was evidence that Whisnant had sometimes been violent toward Michael, those acts "[did] not hold the same purpose" because "[t]hey were not to have control over [Michael]" or "to intimidate him, to minimize him, to bully him, to isolate him." Dr. Hughes went on to suggest that any discrepancies between Whisnant's two accounts of the shooting (her interview and her written statement), or between her accounts and other witnesses' accounts, could be explained by people's varying personal histories and different physical perspectives and by Whisnant having just experienced a trauma.

The State presented some evidence to undermine Whisnant's defense and her accounts of the shooting. In regard to any potential claim that Whisnant's gun fired accidentally, the State called a ballistics expert from the GBI, who testified that the gun required

about 5.75 pounds of force to fire, which is the amount of force it would take to pull a gallon of milk across a table. As to Whisnant's statement that Michael charged at her with two shotguns and grabbed hold of her, a police investigator testified that no "long guns" were found at the crime scene, and GBI experts testified that Whisnant's gun was at least five feet away from Michael when it was fired, based on the lack of "stippling" and gunpowder residue on Michael's body, the minimal damage to his shirt, and the placement of the bullet wound. As to Whisnant's statement that she was un-armed until she "got" a gun to shoot Michael, an investigator testi-fied that Garcia told police that Whisnant already had a gun with her as she went into the house from the car. And as for the claim that Whisnant did not know the gun was loaded, Jordan testified that Whisnant had loaded the gun earlier that day. Finally, the State elicited testimony from Alexis and Jordan about occasions when Whisnant had been violent or threatening toward Michael. One time, she nearly stabbed him with a screwdriver. Two days be-fore the shooting, she "[came] at" him with a knife. And on the day

9

of the shooting, she kicked a chair out from under Michael, threatened to "cut out his voicebox so nobody could hear him complain anymore," and told him that she could "kill him and get away with it and only spend 70 hours in a nut house."

2. Whisnant contends that the evidence at trial, which she characterizes as entirely circumstantial, was not sufficient to support her convictions, either as a matter of constitutional due process or under Georgia statutory law.

We evaluate a due process challenge to the sufficiency of the evidence by "viewing the evidence presented at trial in the light most favorable to the verdicts, and asking whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt." *Henderson v. State*, 317 Ga. 66, 72 (2023). "[C]onflicts or inconsistencies in the evidence, credibility of witnesses, and reasonable inferences to be derived from the facts" are for the jury to resolve. *Perkins v. State*, 313 Ga. 885, 891 (2022) (citation and punctuation omitted).

Under that standard, the evidence was constitutionally sufficient to support Whisnant's conviction for felony murder predicated on aggravated assault. Whisnant was charged in Count 2 of the indictment by causing Michael's death, "irrespective of malice, by shooting him." A person commits aggravated assault, a felony, when she "[a]ttempts to commit a violent injury to the person of another" "[w]ith a deadly weapon." OCGA §§ 16-5-20(a)(1) & 16-5-21(a)(2). And a person commits felony murder when she "causes the death of" another person, "irrespective of malice," while "in the commission of a felony." OCGA § 16-5-1(c). Here, there was no dispute that Whisnant shot and killed Michael, so the only question for the jury was whether the shooting was legally excused. Whisnant claimed early on that she shot Michael by accident because she did not know the gun was loaded, but the jury was free to disbelieve that claim, especially given the testimony that Whisnant had loaded the gun earlier that day. See *Hopwood v. State*, 307 Ga. 305, 306 (2019) (jury was free to disbelieve the claim that the shooting was unintentional). At trial, Whisnant's defense centered more on justification, but the only

11

evidence supporting that defense — the claim that Michael was attacking Whisnant when she fired — was Whisnant's own self-serving testimony, and the jury was free to disbelieve that testimony, too. See *Maynor v. State*, 317 Ga. 492, 497–98 (2023) (jury was free to disbelieve the defendant's self-serving testimony that he shot the victim in self-defense). Viewed in the light most favorable to the verdict, the evidence authorized the jury to find that Whisnant shot Michael intentionally and without justification. That evidence authorized the jury to find that Whisnant and Michael had a history of violence toward each other; that on the day in question, she got out of the car, returned to the house with a gun, and began arguing with Michael; and that she shot him from across the room. The jury was thus authorized to find Whisnant guilty of felony murder, even if it did not find that she intended to kill Michael. See *Scott v. State*, 306 Ga. 417, 423 (2019) ("Unlike malice murder, felony murder does not require intent to kill; rather, the defendant only must have intended to commit the underlying felony.") (citation and punctuation omitted).

To the extent Whisnant challenges the sufficiency of the evidence supporting her conviction for cruelty to children against Alex Garcia, that evidence was sufficient as well. A person commits cruelty to children in the second degree when she "with criminal negligence causes a child under the age of 18 cruel or excessive physical or mental pain." OCGA § 16-5-70(c). The evidence was sufficient to show that Whisnant shot Michael intentionally and without justification in the presence of Garcia. That act met the elements of the offense. See *Alexander v. State*, 274 Ga. 787, 789 (2002) (evidence sufficient to authorize conviction for cruelty to children in the second degree when the defendant physically assaulted someone in the presence of a young child). See also *Jones v. State*, 304 Ga. 594, 599 (2018) ("A jury may assess the circumstances of the nature of the injuries suffered to infer that pain inflicted by a defendant was cruel and excessive.").

Whisnant also challenges the sufficiency of the evidence under Georgia statutory law, relying on OCGA § 24-14-6, which provides that a conviction resting entirely on circumstantial evidence cannot

stand unless the evidence "exclude[s] every other reasonable hypothesis save that of the guilt of the accused." But the statute does not apply to her convictions. There was direct evidence that she shot Michael: she admitted to the police that she shot him, and Garcia testified as an eyewitness to the shooting. See *Bates v. State*, 317 Ga. 809, 815 (2023) (eyewitness testimony identifying the defendant as the perpetrator is direct evidence of guilt); *Walker v. State*, 314 Ga. 390, 394 (2022) (defendant's admissions are direct evidence of guilt). If any direct evidence of guilt is presented, the circumstantial-evidence statute does not apply. See *Bates*, 317 Ga. at 815 (citation omitted). And although Whisnant argues that her claim of justification is an "alternative hypothesis" that must be "excluded" under the statute, the evidence authorized the jury to find beyond a reasonable doubt that Whisnant did not shoot Michael in self-defense, as explained above.

3. Whisnant also argues that the trial court erred in declining to grant a new trial based on the "general grounds" set out in OCGA § 5-5-20 and OCGA § 5-5-21. Under those statutory provisions, a

trial court may grant a new trial if the verdict was "contrary to evidence and the principles of justice and equity," OCGA § 5-5-20, or "decidedly and strongly against the weight of the evidence," OCGA § 5-5-21. But a trial court's decision as to the general grounds is "left to the sole discretion of the trial court." *Anderson v. State*, 319 Ga. 56, 60 (2024). See also, e.g., *Adams v. State*, 318 Ga. 105, 114 (2024); *King v. State*, 316 Ga. 611, 616 (2023). On appellate review, our role is limited to determining whether the trial court exercised that discretion. See, e.g., *Gray v. State*, 304 Ga. 799, 802 (2018) ("[A]ppellate courts do not have the same discretion [as trial courts] to order new trials.") (citation omitted). And absent affirmative evidence to the contrary, we presume that the trial court did so. See *Anderson*, 319 Ga. at 60; *Ward v. State*, 316 Ga. 295, 299 (2023). Here, in denying Whisnant's motion on the general grounds, the trial court explained that it had considered conflicts in the evidence, the weight of the evidence, and the credibility of the evidence. None of that is affirmative evidence that the trial court did not exercise its discretion to consider whether to grant a new trial based on the general grounds,

so this claim fails. See *Anderson*, 319 Ga. at 60; *Ward*, 316 Ga. at 299.

4. Finally, Whisnant contends that the trial court "failed to fully consider" Whisnant's claim of self-defense or the expert testimony on battered person syndrome. We understand this contention to refer to the trial court's denial of Whisnant's motion for immunity from prosecution under OCGA § 16-3-24.2. That statute provides, among other things, that a person may be immune from prosecution if she used force in a manner that would qualify for a defense of justification under OCGA § 16-3-21(a) — that is, if the defendant reasonably believed that she had to use force to prevent great bodily injury. To prevail on a motion for immunity on that basis, the defendant must show by a preponderance of the evidence that she acted in self-defense. See *Russell v. State*, 319 Ga. 556, 560 (2024). When we review a trial court's order granting or denying such a motion, we review the evidence in the light most favorable to the court's ruling, and we accept the trial court's findings of fact and judgments of credibility if there is any evidence to support them. See *State v.*

16

*Copeland*, 310 Ga. 345, 346 (2020). But we review de novo the trial court's application of OCGA § 16-3-24.2 to the facts. See id.

Here, in the order denying Whisnant's motion, the trial court recounted the evidence presented at trial and at a pre-trial hearing on the motion. The court found that Whisnant "has frequently been a victim of [Michael's] aggression and violence," which sometimes resulted in injuries to Whisnant. But the court also credited testimony that Whisnant could be violent toward Michael, and that the two "were engaged in a mutual, consensual cycle of violence against each other." The court found that Whisnant likely suffered from battered person syndrome, but it found that battered person syndrome did not account for all the inconsistencies between Whisnant's accounts of the shooting and the trial testimony of Garcia, Jordan, and Alexis. The court found that on the day of the shooting, Whisnant left her car, went into the house where Michael was, argued with Michael, and after some time, shot Michael. But the court found that "[n]othing else has been made clear about the events on the night of

17

the shooting," including whether Whisnant and Michael were physically fighting when the shot was fired. The court concluded that Whisnant had not shown by a preponderance of the evidence that she reasonably believed she had to shoot Michael to prevent great bodily harm.

The trial court's findings were supported by the evidence. Most of the evidence at trial did not support Whisnant's claim of self-defense. Garcia testified that "[Michael] pushed [Whisnant] and you just hear, boom, and he falls to the ground." Alexis and Jordan, who were in another part of the house, heard only arguing followed by a gunshot. And Whisnant herself told police both that she shot Michael as he was attacking her and that she did not know the gun was loaded. In short, there was some evidence to support the trial court's finding that Whisnant had not shown that she shot Michael under circumstances that qualified as self-defense. As a result, we do not disturb that finding. See *Copeland*, 310 Ga. at 346.

Whisnant argues that the trial court failed to properly consider the evidence about battered person syndrome. But that syndrome is

18

not an independent defense, only a component of the defense of justification. See *Virger v. State*, 305 Ga. 281, 299 (2019). In practice, whether a person has battered person syndrome bears on the question whether a defendant could reasonably believe that deadly force was necessary. A person with battered person syndrome might reasonably perceive a threat in circumstances where a person without battered person syndrome might not. See *Demery v. State*, 287 Ga. 805, 807 (2010) ("The evidence of battered person syndrome is admissible to show the defendant had the requisite mental state [for the defense of justification] although the actual threat of harm to the defendant did not immediately precede the homicide."). Here, the trial court found that Whisnant likely did suffer from battered person syndrome, but it found that the syndrome did not fully account for the murky facts around the shooting. The court found that Whisnant had not shown by a preponderance of the evidence that *any* circumstances existed that would have justified the use of deadly force. It found that the evidence could just as easily support the conclusion that Whisnant killed Michael in anger or retaliation,

19

and that she was lying about being attacked, and thus that she did not establish immunity by a preponderance of the evidence. See *Russell*, 319 Ga. at 560. Under this view of the evidence, battered person syndrome played no role in Whisnant's decision to shoot Michael. So this argument does not rescue Whisnant's claim about the trial court's immunity finding, and so that claim fails.

*Judgment affirmed. All the Justices concur, except Land, J., not participating.*